**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| GERARDO CAMPOS, ET AL., | : | |
| | : | |
| Plaintiffs, | : | CASE NO. 3:12-cv-01529-ADC-BJM |
| | : | |
| v. | : | |
| | : | |
| SAFETY-KLEEN SYSTEMS, INC., ET AL., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT SAFETY-KLEEN SYSTEMS, INC.'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT SAFETY-KLEEN SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT**

DEFENDANT SAFETY-KLEEN SYSTEMS, INC. ("Safety-Kleen") hereby replies to Plaintiffs' Response in Opposition to Safety-Kleen's Motion for Summary Judgment and states:

Plaintiffs respond to Safety-Kleen's Motion with irrelevant argument, inconsistent positions and red herrings, all of which reveals their apparent misunderstanding of basic tenets of toxicology and epidemiology central to a scientifically-valid causation analysis. In short, Plaintiffs merely regurgitate their arguments in defense of Safety-Kleen's *Daubert* challenges to Plaintiffs' experts, gloss over both procedural and evidentiary flaws in their causes of action and, in so doing, fail to set forth any facts showing that there is a genuine issue for trial.

## A. PLAINTIFFS' OPPOSITION SETS FORTH NO EVIDENCE THAT SK 105, MINERAL SPIRITS, OR EVEN BENZENE CAN CAUSE CML.

Plaintiffs' leading argument—that benzene is a carcinogen, SK 105 contains benzene, and therefore SK 105 causes CML—is neither supported by science, the law, nor even common sense. Indeed, Federal Courts have consistently deemed the practice of attributing the effects of one substance to another similarly classified substance, when based upon inference alone, an unreliable methodology.[1] Despite the foregoing, Plaintiffs suggest the mere presence of benzene

[1] *See Henricksen v. ConocoPhillips Co.*, 605 F.Supp.2d 1142, 1176 (E.D. Wash. 2009); *McClain v. Metabolife Int'l,*

in any product is enough to establish causation and make no effort to bring forth any causation evidence regarding the material at issue, SK 105, or even, more generally, mineral spirits.

**1. Plaintiffs' dismissal of relevant epidemiological literature—the acknowledged "*best evidence of causation* in toxic tort actions"—supports summary judgment.[2]**

Plaintiffs argue epidemiological studies are not a prerequisite to proving causation, citing *Milward v. Acuity Specialty Products Group, Inc.*, as well as wholly inapplicable asbestos cases.[3] Not surprisingly, Plaintiffs cherry-pick statements from *Milward* and neglect to provide the full context.[4] *Milward* addresses situations where there is a lack of relevant epidemiological evidence; it does not excuse a plaintiff from addressing epidemiological studies where they exist, as they do here.[5] As the Court makes clear, "a substantial body of epidemiological evidence challenging causation cannot be ignored."[6] Thus, *Milward* does nothing to disturb the well-established principle that epidemiology is generally considered to be the best evidence of causation, nor does it relieve Plaintiffs of their obligation to nonetheless prove medical causation.[7] Here, the relevant epidemiological literature does not support Plaintiffs' experts' general causation opinions, Plaintiffs' experts ignored relevant studies and medical literature, and the statements and classifications of relevant regulatory and scientific bodies do not support

---

*Inc.* , 401 F.3d 1233, 1244–45 (11th Cir. 2005); *Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1207 (10th Cir. 2002); *Rider v. Sandoz Pharm. Corp.*, 295 F.2d 1194 (11th Cir. 2002); *Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 990 (8th Cir. 2001); *Schudel v. General Electric Co.*, 120 F.3d 991, 997 (9th Cir. 1997), *abrogated on other grounds by Weisgram v. Marley Co.*, 528 U.S. 440 (2000) ("it would be improper to infer conclusions as to the toxicity of TCA and Perc based on the toxicity of other solvents, and that repeated exposure to nonpersistent toxins such as organic solvents over a long period of time must be documented to establish a causal relationship.").

2 *See Rider*, 295 F.3d at 1202.

3 *See* ECF No. 135 at 7, fn 11. Cases related to asbestos and mesothelioma are simply not analogous to a case such as this, where general causation is disputed, and a central issue before the Court is whether the substance at issue is even capable of causing the disease at issue. *See Quirin v Lorillard Tobacco Co.*, 2014 U.S. Dis. LEXIS 26218 (N.D. Ill. Feb. 28, 2014); *In re Asbestos Prod. Liab. Litig.*, 714 F.Supp.2d 5355 (E.D. Pa. 2010).

4 *Milward v. Acuity Specialty Products Group, Inc.*, 639 F.3d 22 (1st Cir. 2011).

5 *See Id.* at 24.

6 *Id.* at 24, *citing Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 882 (10th Cir. 2005); *see also In re Rezulin Prods. Liab. Litig.*, 369 F.Supp.2d at 435-36 (citing Ref. Manual On Scientific Evidence, supra note 33 at 338-39).

7 *See Milward*, 639 F.3d at 24; *see also Rider*, 295 F.2d at 1198-99. And, as recognized, a lack of statistically significant epidemiology forces a plaintiff to undertake the difficult task of establishing causation without epidemiology. *Id.*

their general causation opinions.[8]

Even accepting Plaintiffs' dismissal of epidemiological studies, Plaintiffs' experts rely on no other scientifically-reliable evidence to support their causation opinions. Dr. Frank cites only to unsupportive epidemiological studies and, beyond that, relies only on his own *ipse dixit*. Plaintiffs' Opposition represents that Dr. Goldsmith relied upon "all" published research studies on benzene and CML,[9] but Goldsmith previously admitted that he did not review all reliable and relevant epidemiological literature on benzene and CML and, specifically, reviewed only four of the twelve sources considered by the "reliable" 2012 Monograph for Benzene issued by IARC.[10]

**2. An irrelevant, California-specific labeling regulation, mischaracterized Safety-Kleen expert testimony, and unsupported website statements fail to create a genuine issue of fact to defeat summary judgment.**

Plaintiffs' weak position is borne out by their reliance on California's Prop 65 warning on Safety-Kleen's MSDS as proof that SK 105 contains levels of benzene sufficient to cause CML.[11] In this regard, they state, *without citation*, that "[t]he State of California has determined that SK 105 contains more than trace amounts of benzene, and requires a special warning because Safety-Kleen has not been able to demonstrate that there is 'no significant risk associated with SK 105.'"[12] Not only has California made no such determination, but Plaintiffs' false statements blatantly misrepresent the significance of a Prop 65 warning and fall well short of providing scientifically-reliable evidence of causation.

---

[8] Plaintiffs claim "published scientific literature provides support for causation opinions concluding an association between benzene exposure and CML," yet their cited studies provide no such support. *See* ECF No. 135 at 7, fn. 10. *See* ECF 113 at 9 n.47, 11-13 (setting forth summary of conclusions from Plaintiffs' cited materials).

[9] ECF No 135 at 8.

[10] Goldsmith acknowledges IARC is a reliable authority on the issue of human carcinogens and that it found *insufficient evidence* that benzene exposure causes CML. ECF No. 93-4, Deposition David F. Goldsmith, MSPH, Ph.D., ECF No. 113-13, taken April 29, 2014 at 118:7-14, 132:11-16; 117:9-12; 122:1-20

[11] The Safe Drinking Water and Toxic Enforcement Act of 1986 ("Prop 65") is a California law requiring businesses to disclose the presence of certain constituents of products. Cal. Health & Safety Code § 25249.5. Mere evidence of carcinogenicity of a chemical, such as benzene, even at trace levels in a larger solution, in "experimental animals," is sufficient to require a chemical's (*e.g.* benzene) appearance on a label as a "known carcinogen." *See* Cal. Code Regs. tit. 27, § 25306(e)(2). This standard has no relevance to a causation analysis under *Daubert. Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 783 (10th Cir. 1999)(citing *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 198 (5th Cir. 1996)).

[12] ECF No. 135 at 5.

Plaintiffs' reliance on an out-of-context comment by Safety-Kleen's expert, Dr. Peter Shields, is similarly misplaced. Plaintiffs point to his misstatement in a 2008 deposition regarding an entirely different disease process, in which he commented that benzene can cause AML and CML.[13] His singular reference to CML in that case was in error and CML was never again mentioned in the deposition or at trial.[14] Dr. Shields has served as a causation expert in two lawsuits involving CML, one in 2006 and the instant case. His opinions in each are thorough, well-researched and evidence the consistency of his testimony—that there is no causal association between benzene and CML—even pre-dating Plaintiffs' referenced misstatement.[15]

Finally, Plaintiffs claim "learned medical institutions…all recognize benzene exposure can cause CML," and cite to a string of websites in support.[16] In so doing, Plaintiffs provide no expert opinion, only attorney argument. In fact, Plaintiffs' experts never relied on or referenced these websites, nor have Plaintiffs shown that such is the type of evidence reasonably relied upon in forming scientifically-reliable causation opinions under *Daubert*. Further, Plaintiffs misrepresent the content of these websites. For example, their cited Fox Chase Medical Center webpage relates to myelodysplastic syndromes, not CML, and, notably, the Center's page devoted specifically to CML neither states any causal relationship between benzene and CML nor even mentions the word benzene at all.[17]

**3. Plaintiffs cite no scientifically-reliable evidence to support specific causation.**

As set forth in the most recent *Milward* opinion, a benzene exposure plaintiff's expert must quantify a threshold exposure level and establish the plaintiff's cumulative exposure level exceeded that threshold.[18] Plaintiffs failed to offer evidence that demonstrates Dr. Frank relied

[13] Plaintiffs improperly challenge Dr. Shields' testimony under *Daubert*. Safety-Kleen's Objections thereto set forth the context of Dr. Shields' misstatement and the reliability of his opinions. ECF No. 144.
[14] *See* Declaration of Dr. Peter Shields, attached hereto as Ex. QQ.
[15] *Id.*
[16] ECF No. 135 at 6.
[17] *See* ECF No. 135-17.
[18] *Milward v. Acuity Specialty Products Group, Inc.*, 2013 WL 4812425, *1, *8 (D.Mass., 2013), *appealed*, No. 13-

on a dose measurement, as is required, or even considered the benzene content of Safety-Kleen's solvent.[19] Instead, they attempt to employ a wholly inapplicable asbestos-case causation analysis, which virtually assumes general causation and glosses over the vastly different realm of scientific literature regarding benzene exposures.

Further, Plaintiffs claim they have satisfied their specific causation burden because Dr. Frank performed a differential diagnosis, wherein he mistakenly reasoned that Campos was exposed to benzene and therefore his CML was not idiopathic.[20] But, despite Plaintiffs' intent, "simply claiming that an expert used the 'differential diagnosis' method is not some incantation that opens the *Daubert* gate."[21] Most importantly, as recognized by Federal Courts in considering the admissibility of expert causation testimony, "the presence of a known risk factor is not a sufficient basis for ruling out idiopathic origin in a particular case, particularly where most cases of the disease have no known cause. **[I]n [these] cases, analysis beyond a differential diagnosis is required.**"[22]

Plaintiffs' closing paragraph in opposition to summary judgment on causation asserts "benzene is an established risk factor for developing CML," cites only to a British charity organization's website, and concludes Safety-Kleen's Motion should be denied.[23] Their summation perfectly illustrates the thematic flaw in their position, to wit: a reliance on scientifically-unvalidated sources for general causation and speculative, unsupported leaps for specific causation. For these reasons, summary judgment is proper.

## B. PLAINTIFFS' OPPOSITION MADE NO "FORSEEABILITY" SHOWING AS TO PROXIMATE CAUSE AND THUS SUMMARY JUDGMENT IS APPROPRIATE.

---

2132 (1st Cir. argued April 9, 2014) (decision pending).

[19] ECF No. 135-0, at 10-11.

[20] ECF No. 135-0, at 8-11.

[21] *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 674 (6th Cir.2010).

[22] *Hendrian v. Safety-Kleen Systems, Inc.*, No. 08-14371, 2014 WL 1464462, at *1, 7 (E.D. Mich. Apr. 15, 2014); *see also Henricksen v. Conoco Phillips, Co*., 605 F.Supp.2d 1142, 1162 (E.D.Wash. 2009) (emphasis added).

[23] ECF No. 135 at 12. Plaintiffs' cite to a charity organization's webpage, its author, source of information and methodology employed are all unknown, and, notably, it also states, that most people "wouldn't come into contact with enough benzene for it to increase their risk at all." *See* ECF No. 135-15.

Plaintiffs must show both (1) actual cause and (2) foreseeability (*i.e.*, that Safety-Kleen could have reasonably foreseen a causal relationship between the benzene potentially present in SK 105 and CML).[24] To date, Plaintiffs have put forth no evidence in support of their foreseeability burden of proof and Plaintiffs' Opposition fails to even address the issue. Moreover, the record clearly negates it: only two studies cited by Plaintiffs' causation experts pre-date Campos' alleged exposure period and neither provides conclusions on mineral spirits and/or benzene and CML.[25]

According to the First Circuit's well-established "raise-or-waive" rule, if, in response to a party's motion for summary judgment, the opposing party fails to assert a legal reason why summary judgment should not be granted, that ground is waived.[26] Thus, Plaintiffs' disregard of the foreseeability element alone provides sufficient basis to sustain summary judgment.

### C. PLAINTIFFS' OPPOSITION SETS FORTH NO EVIDENCE IN SUPPORT OF SAFER ALTERNATIVE DESIGN THUS PRECLUDING THEIR STRICT LIABILITY DESIGN DEFECT CLAIM AS A MATTER OF LAW.

Safety-Kleen seeks summary judgment on Plaintiffs' strict liability design defect claim because (1) Plaintiffs admitted that virgin SK 105, the solvent at issue, is in fact a safer alternative design and (2) Plaintiffs failed to bring forth any evidence, much less expert evidence,

---

[24] "In Puerto Rico, just as in the common law jurisdictions, foreseeability is the touchstone of extracontractual liability." *Marshall v. Perez Arzuaga*, 828 F.2d 845, 847 (1st Cir. 1987); *see also Gonzales v. UpStage Inc.*, 2014 WL 710290 (D.P.R., Feb. 2014) (in a product liability case, determination of foreseeability is "indispensible to the tort claim . . . [and] transcend[s] to the heart of the matter."); *See Rivera Narvaez v. U.S.*, 2013 WL 4045686, *1, *2 (foreseeability must be proven to prevail on a negligence claim under Article 1802 of Puerto Rico's Civil Code); *Perez-Trujillo v. Volvo Car Corporation*, 137 F.3d 50, 53 (1st Cir. 1998) (foreseeability must be proven to prevail on strict product liability claim under Puerto Rico law).

[25] Alice Hamilton, MD, *The Growing Menace of Benzene (Benzol) Poisoning in American Industry*, Vol. 78 J. AM. MED. ASSOC. No. 9 at 627-630, Mar. 4, 1922 (article has nothing to do with benzene and CML); Aksoy, M. (1985) *Benzene as a leukemogenic and carcinogenic agent.* Am. J. Ind. Med., 8:9-20 (contains no conclusions regarding benzene and CML).

[26] *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir.1995); *Arrieta-Gimenez v. Arrieta-Negron*, 859 F.2d 1033, 1042 (1st Cir. 1988) *certified question answered*, 551 So. 2d 1184 (Fla. 1989); *see also CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1525 (1st Cir. 1996) ("courts are [] entitled to expect represented parties to incorporate all relevant arguments in papers that directly address pending motion"); *Huongsten Prod. Imp. & Exp. Co. Ltd. v. Sanco Metals LLC*, CIV. 10-1610 SEC, 2012 WL 2571301 (D.P.R. July 2, 2012) (citing *Rocafort v. IBM Corp*, 334 F.3d 115, 121 (1st Cir 2003).

of a safer alternative design to SK 105 or Safety-Kleen's parts-washing machines.[27] Plaintiffs' Opposition outright ignores their unequivocal admission in their live pleading that virgin SK 105 is, by their own account, the safer alternative design to recycled SK 105 and erroneously responds that Safety-Kleen failed to cite support for the foregoing. Ironically, in their next breath, Plaintiffs claim "the testimony has all been that 'virgin' SK 105 is equally noxious to humans as Safety-Kleen's recycled 105 solvent," but, curiously, omit citation to any such testimony,[28] much less explain their contradictory statements in their live pleading.[29] Thus, in short, when Plaintiffs believed recycled SK 105 to be at issue, they pointed to virgin SK 105 as the safer alternative design; but, when they later discovered Campos could have only used the virgin solvent, they reversed course and claim it's now defective. Moreover, considering only Plaintiffs' most recent adaptation of their argument, they have yet to identify any supposed safer alternative design for the virgin solvent, even in response to Safety-Kleen's Motion, and, as such they have resultantly waived any such claims related thereto.[30] Plaintiffs' continually-evolving arguments and failure to prove an essential element of their claim exposes the many inconsistencies and shortcomings of the allegations in this case and, for this reason alone, summary judgment is proper on their design defect cause of action.[31]

Further, Plaintiffs also proffered no evidence—expert or otherwise—of safer alternative design in support of their parts-washing machine defect claim. Without expert testimony of safer alternative design, Plaintiffs cannot meet their burden of proof.[32] Plaintiffs offer no expert testimony, only attorney argument that the machine "should have been designed in such a way as

---

[27] *See* Safety-Kleen's Motion for Summary Judgment, ECF No. 113 at 16-18.

[28] In fact, Plaintiffs' expert, Dr. Kopstein, admitted he lacks knowledge regarding the differences, if any, in the virgin and recycled SK 105, stating "I don't really have an understanding as to how they would differ." *See* ECF No. 135-35 at 237:23-238:17.

[29] ECF No. 135 at 12-13.

[30] *See supra* note 26..

[31] *Quintana-Ruiz v. Hyundai Motor Corp*., 303 F.3d 62, 69-72 (1st Cir. 2002); *Fremaint v. Ford Motor Co*., 258 F.Supp.2d 24, 30 (D.P.R. 2003).

[32] *Id.*

to prevent the vapors, and the solvent itself, from coming into contact with a user."[33] Thus, not only do Plaintiffs lack the necessary expert opinion that Campos' alleged injuries would not have occurred but for the challenged design characteristics, Plaintiffs' experts do not discuss or mention how the alleged defects in the machine proximately caused Campos' purported injuries or the mechanical feasibility of any safer alternative design.[34] Because Plaintiffs have not and cannot sustain their burden of proof, summary judgment is appropriate.

## D. PLAINTIFFS' OPPOSITION IDENTIFIED NO EVIDENCE OF WARNING DEFECT.

As set forth fully in Safety-Kleen's Motion, Plaintiffs must show Safety-Kleen violated the Federal Hazard Communication's ("HazCom") warning requirements in order to prevail on their strict warning defect/failure to warn claim.[35] Plaintiffs' Opposition sets forth no evidence in support of their burden. In fact, Plaintiffs have yet to provide a single data point showing the SK 105 ever contained 1,000 ppm benzene or higher—the quantity triggering HazCom's listing requirement. Rather, Plaintiffs' sole response is that Safety-Kleen should have included the *amount* of benzene on its MSDS. Although Plaintiffs fail to address this point, HazCom has no such "amount" requirement and the First Circuit specifically rejected such an attempt to expand warning obligations under HazCom in *Torres v. LPS Laboratories, Inc.*[36] Plaintiffs' Opposition also vaguely claims, albeit only in passing, that Safety-Kleen's MSDS does not provide "instructions for using the product safely."[37] Again, Plaintiffs point to no evidence of any specifics in this regard, and, as such, their cause of action fails as a matter of law.[38]

## E. PLAINTIFFS' FUTURE MEDICAL EXPENSES "EVIDENCE" IS PRECLUDED BY FRCP 37(C) AND IS UNSUPPORTED BY THE NECESSARY EXPERT TESTIMONY FOR SUCH RELIEF.

Safety-Kleen requests summary judgment on Plaintiffs' future loss of earnings and future

---

[33] ECF No. 135 at 13.

[34] Kopstein only makes superficial reference to local exhaust ventilation. *See also Quintana-Ruiz v. Hyundai Motor Corp.*, 303 F.3d 62, 69-72 (1st Cir. 2002); *Fremaint v. Ford Motor Co.*, 258 F.Supp.2d 24, 30 (D.P.R. 2003).

[35] *See* 29 C.F.R. 1910.1200; *see also Torres-Rios v. LPS Laboratories, Inc.*, 152 F.3d 11, 13-15 (1st Cir. 1998).

[36] *Id.*

[37] ECF No. 135 at 14-15.

[38] *See Torres*, 152 F.3d at 13-15.

medical expenses claims based upon Plaintiffs' failure quantify same during discovery under Rule 26(a)(1)(A)(iii),[39] failure to designate or offer expert testimony in support thereof, [40] and failure to properly plead for such relief under the Federal Rules of Civil Procedure.[41] Plaintiffs' Opposition does not dispute or otherwise respond to a single argument or authority set forth in Safety-Kleen's motion in this regard and, for that matter, makes not even passing reference to their contested claim for future loss of earnings.[42] Instead, in a scrambling effort to defeat summary judgment on these grounds, they submit two, never-before-produced affidavits—one from Mr. Campos and the other from his treating physician—which they suggest satisfy their evidentiary burden as to proving Plaintiffs' future medical expenses.[43]

Under Federal Rule of Civil Procedure 37(c)(1), if a party fails to provide information or identify a witness as required by rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.[44] Rule 37(c)(1) is a mandatory, self-executing sanction that applies to evidence used in a summary judgment motion.[45] Thus, Plaintiffs' sudden quantification of alleged future medical expenses, after Safety-Kleen filed its motion for summary judgment, is the exact discovery gamesmanship that Rule 37(c) seeks to prohibit. Plaintiffs had two years to bring forth their evidence and supplement their disclosures; given that the affiants are Plaintiff and his treating physician, they have no plausible argument that such

[39] *See* ECF No. 13 at 12; SMF No 33; *See* Fed. R. Civ. P. 26(a)(1)(A)(iii). SMF No 34, 36-37.
[40] *Mejias-Quiros v. Maxxam Property Corp.*, 108 F. 3d 425, 428 (1st Cir. 1997).
[41] Fed. R. Civ. P. 9(g) requires that "if an item of special damage is claimed, it must be specifically stated [in the pleading]." Fed. R. Civ. P. 9(g); *Avitia v. Metropolitan* Club, 49 F.3d 1219, 1226 (7th Cir. 1995). Plaintiffs cannot lawfully bring a claim not made in their complaint. *Rosario Rivera v. PS Group of Puerto Rico, Inc*., 186 F.Supp.2d 63, 66-67 (D. Puerto Rico, 2002); *Thibeault v. Square D Co*., 960 F.2d 239, 247 n. 7 (1st Cir. 1992) ("we heartily endorse the utilization of discovery closure dates...as a case management tool").
[42] *See* ECF No. 135 at 15-16.
[43] *Id.*
[44] Fed. R. Civ. P. 37(c)(1); *see also Klonoski v. Mahlab*, 156 F.3d 255 (1st Cir.1998); *see also Harriman v. Hancock County*, No. 08-122-B-W, 2009 WL 902073, at *2 (D. Me. Mar. 31, 2009) .
[45] Rule 37(c)(1) and advisory committee's note (1993); *Klonoski*, 156 F.3d at 269 ("rule clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion").

information was not readily available prior to the close of discovery.[46] Undoubtedly, Plaintiffs cannot demonstrate—nor have they bothered to do so—that their delay was either substantially justified or harmless, especially in light of the additional "several millions of dollars" in damages, which they set forth in their new evidence.[47] As such, this Court should disregard these affidavits and all facts and denials based upon same in conformance with Rule 37(c)(1).[48]

Notwithstanding the foregoing, Plaintiffs must bring forth expert testimony in support of future medical expenses.[49] To the extent Plaintiffs offer Dr. Garcia's affidavit as expert testimony, inadmissibility aside, it is nothing more than a generic assertion that future office visits or medications may be necessary.[50] In short, she in no way isolated the harm allegedly caused by Campos' CML from that resulting from his CMT.[51] Dr. Garcia's loose estimates do not provide the informed forecasts required by courts and cannot serve as the basis of a future medical expenses award.

### F. PLAINTIFFS WAIVED OBJECTION TO SUMMARY JUDGMENT ON THEIR LOSS OF FUTURE EARNINGS CLAIM.

Plaintiffs' failure to respond to Safety-Kleen's motion for summary judgment on Plaintiffs' loss of future earnings claim constitutes waiver of any opposing argument.[52] As such, for the reasons set forth in Safety-Kleen's Motion, summary judgment is appropriate.

---

[46] *See Ambit Corp. v. Delta Airlines, Inc.*, 707 F. Supp. 74 (D. Mass. 2010) (noting that eleven months of fact discovery provided "ample opportunity" to gather the facts needed to support party's position). Discovery closed on May 16, 2014. *See* ECF No. 92.

[47] *See* ECF No. 135-31 at 2.

[48] *See, e.g., Harriman*, 2009 WL 902073, at *2; *Klonoski*, 156 F.3d at 269; *Ambit Corp.*, 707 F. Supp. at 78 (stating that new expert declaration and other evidence submitted after discovery deadline would not be considered by the court).

[49] *Mejias-Quiros*, 108 F. 3d at 428; *Williams v. Missouri Pacific R. Co*., 11 F.3d 132, 134-135 (10th Cir. 1993) (expert testimony must be utilized to offer informed forecasts and provide concrete evidence demonstrating the reasonable value of those losses).

[50] *Id.*; *see also Wood v. Day*, 859 F.2d 1490, 1494 (D.C. Cir. 1998); *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1427-28 (5th Cir. 1988). She provides no testimony regarding life expectancy, any specificity as to his medical care, or the impact of Mr. Campos' genetic disease, Charcot-Marie-Tooth ("CMT"), on his alleged injuries, conditions, physical impairments, treatment and/or prognosis

[51] *See, e.g., Trinity Church in Boston v. John Hancock Mut. Life Ins. Co*., 399 Mass. 43, 50 (1987); *Dalton v. Demos Brothers General Contractors, Inc*., 334 Mass. 377, 379 (1956); *Schiller & Schmidt. Inc. v. Nordisco Corp*., 969 F.2d 410, 415-416 (7th Cir. 1992).

[52] *See supra* note 26.

**RESPECTFULLY SUBMITTED**, this 23rd day of July, 2014.

Respectfully submitted,

JONES CARR M[c]GOLDRICK, L.L.P.

/s/ Amanda M. Koch
Amanda M. Koch
Texas State Bar No. 24051089
5910 N. Central Expy., Ste. 1700
Dallas, TX 75206
Phone: (214) 828-9200
Fax: (214) 828-9229
Amanda.koch@jcmfirm.com
and
Giancarlo Font-García
RIVERA-CARRASQUILLO, MARTÍNEZ & FONT
P.O. Box 9024081
San Juan, PR 00902-4081
Phone: (787) 622-6999
ATTORNEYS FOR DEFENDANT
SAFETY-KLEEN SYSTEMS, INC.

**CERTIFICATE OF SERVICE**

On June 23, 2014, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, District of Puerto Rico, using the ECF system. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

By: *_/s/ Amanda M. Koch_*
**Amanda M. Koch**