# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

GERARDO CAMPOS, et al.

    Plaintiffs,

          v.                                  CIVIL NO. 12-1529 (PAD)

SAFETY-KLEEN SYSTEMS, INC. et al.,

    Defendant.

## MEMORANDUM AND ORDER

Delgado-Hernández, District Judge.

       Gerardo Campos, his wife Yadira Veguilla-Rosario, their legal conjugal partnership, and their minor child C.C.V. initiated the instant action under Puerto Rico law against Safety-Kleen Systems, Inc.; Makita USA, Inc.; National Rental and Sales, Inc.; and Tool Box, Inc., seeking redress for damages arising out of Campos' alleged exposure to a chemical agent ("SK-105"), as a result of which he supposedly developed chronic myelogenous leukemia ("CML").[1]  The defendants denied liability.

       Following discovery, the parties moved for summary judgment and filed various motions *in limine*.  For the reasons bellow, all of the motions are DENIED, except for (1) Makita's motion for summary judgment at Docket No. 99, which is GRANTED IN PART as to Campos' claim; (2) Safety-Kleen's motion for summary judgment at Docket No. 113, which is GRANTED IN PART to exclude potential recovery of punitive damages; (3) Safety-Kleen's motion at Docket No. 137, which is GRANTED as to leave to file excess pages with respect to Docket No. 138; and (4)

---

[1] Partial judgments dismissing plaintiffs' claims against National Rental and Sales, Inc. and Tool Box, Inc. were entered at Docket Nos. 44 and 52.

Safety-Kleen's request at Docket No. 150, which is GRANTED IN PART with respect to exclusion of internet materials.

Before the Court are:

- "Defendant Safety-Kleen Systems, Inc.'s Motion to Exclude the Testimony, Opinions, and Report of David F. Dr. Goldsmith, Ph.D." (Docket No. 93) – joined by Makita (Docket No. 104) –plaintiffs' opposition (Docket No. 117) and defendants' reply (Docket No. 123);

- "Defendant Safety-Kleen Systems, Inc.'s Motion to Exclude the Testimony, Opinions, and Report of Su-Jung (Candace) Tsai, Sc.D." (Docket No. 94) – joined by Makita (Docket No. 104) – and plaintiffs' opposition (Docket No. 116);

- "Defendant Safety-Kleen Systems, Inc.'s Motion in Limine to Preclude the Testimony, Opinions, and Report of Dr. Arthur Frank" (Docket No. 95) – joined by Makita (Docket No. 104) –plaintiffs' opposition (Docket No. 114), and defendants' reply (Docket No. 125);

- "Defendant Safety-Kleen Systems, Inc.'s Motion to Exclude the Testimony, Opinions, and Report of Melvyn Kopstein, Ph.D." (Docket No. 97) – joined by Makita (Docket No. 104) – plaintiffs' opposition (Docket No. 118), and defendants' reply (Docket No. 124);

- Co-defendant Makita USA's "Motion for Summary Judgment and Memorandum of Law in Support" (Docket No. 99), plaintiffs' opposition (Docket No. 105) and Makita's reply (Docket No. 122);

- Plaintiffs' "Motion for Summary Judgment Against Makita" (Docket No. 109) and Makita's opposition (Docket No. 136);

- "Plaintiffs' Motion to Exclude the Testimony of Julie Panko and Motion for Sanctions" (Docket No. 110), Safety-Kleen's opposition (Docket No. 138), and plaintiffs' reply (Docket No. 153, Exh. 1);[2]

- Plaintiffs' "Motion for Summary Judgment/Motion to Strike Dr. Peter Shields under Federal Rule of Evidence 702 and Daubert" (Docket No. 111), Safety-Kleen's opposition (Docket Nos. 139 and 144), plaintiffs reply to Docket No. 139 (Docket No. 160), and Safety-Kleen sur-reply to Docket No. 160 (Docket No. 165); and

- "Defendant Safety-Kleen Systems, Inc.'s Motion for Summary Judgment" (Docket No. 113), plaintiffs' opposition (Docket No. 135), Safety-Kleen's reply and request to strike evidence in support of Plaintiffs' opposition (Docket Nos. 149 and 150), plaintiffs' sur-reply to Safety-Kleen's evidentiary objections (Docket No. 159), and Safety-Kleen's response to Docket No. 159 (Docket No. 163).

## I.   Motions in Limine

### A.  STANDARD OF REVIEW

The motions at Docket Nos. 93, 94, 95, 97, 110, 111, essentially challenge contemplated expert testimony under Fed. R. Evid. 702.[3]  This rule requires district courts to act as gatekeepers, ensuring that an expert's proffered testimony both rests on a reliable foundation and is relevant to the task at hand.  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993);

---

[2] Pending also is Docket No. 137 (Safety-Kleen's Motion for leave to file excess of pages with regards to Docket No. 138).  That request is GRANTED.  The Court notes that although the motion at Docket No. 153, Exh. 1 was tendered and plaintiffs were ordered to file it in a separate docket entry (Docket Nos. 155-156), they failed to do so.  For purposes of this analysis, the motion will be deemed to have been properly filed.

[3] Specifically, the rule provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.  Fed. R. Evid. 702.

Gerardo Campos, *et al.* v. Safety Kleen Systems, Inc., *et al.*
Civil No. 12-1529 (PAD)
Memorandum and Order
Page 4

Milward v. Acuity Specialty Products Group, Inc., 639 F.3d 11, 14 (1st Cir. 2011).  The task is a flexible one.  Its focus is based solely on principles and methodology, not on the conclusions that expert testimony generates.  Daubert, 509 U.S. at 580.

There are four factors that may assist a trial court in determining the admissibility of an expert's testimony: (1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline.  U.S. v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002).  These factors do not constitute a definitive checklist or test.  Milward, 639 F.3d at 14 (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999)).  Given that there are many different kinds of experts, and many different kinds of expertise, these factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.  Id.  At the end, the Court must determine whether the putative expert is qualified by knowledge, skill, experience, training, or education.  Pages-Ramírez v. Ramírez-González, 605 F.3d 109, 114 (1st Cir. 2010).

Daubert does not require a party who proffers expert testimony to carry the burden of proving that the expert's assessment of the situation is correct.  Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 86 (1st Cir. 1998).  As long as the expert's testimony rests upon good grounds based on what is known, it should be tested by the adversarial process, rather than excluded for fear that jurors will not be able to handle the scientific complexities.  Milward, 639 F.3d at 15 (citing Daubert, 509 U.S. at 590, 596).  Vigorous cross-examination, presentation of contrary evidence, and careful instructions on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.  Daubert, 509 U.S. at 596.

Gerardo Campos, et al. v. Safety Kleen Systems, Inc., et al.
Civil No. 12-1529 (PAD)
Memorandum and Order
Page 5

## B. <u>DISCUSSION</u>

(i)     <u>David F. Goldsmith</u> (Docket No. 93)

Defendants seek to exclude the testimony of Dr. Goldsmith, contending he ignores overwhelming evidence not supporting his general causation opinion that benzene exposure can cause CML (Docket No. 93 at p. 3).  They claim that (1) his methodology does not include a comprehensive review of all available studies regarding benzene exposure as a risk factor for CML, <u>Id.</u>; (2) mineral-spirits-based mixtures – such as SK-105 – are not benzene, and the fact that trace amounts of benzene may be present does not support his conclusion that such spirits can cause CML or have the same toxic effect as benzene, <u>Id.</u> at pp. 6-7; and (3) he relies on studies not applicable to the facts of this case, for they do not involve SK-105 or chemicals with similar properties.  <u>Id.</u> at p. 10.

Plaintiffs, in turn, assert Dr. Goldsmith's education, training and experience in the field of epidemiology qualify him to render the opinions given as part of his testimony (Docket No. 117 at p. 3).  While conceding SK-105 has not been classified as a carcinogen, they claim the solution contains benzene, which in turn is a well-known carcinogen.  <u>Id.</u> at p. 4.  Also, they point out that (1) Dr. Goldsmith's opinions that benzene exposure may cause CML are consistent with published literature, medical institutions as well as the defense's expert, <u>Id.</u> at pp. 7, 13-15; (2) Dr. Goldsmith examined all peer-reviewed published literature on benzene and CML, and there are no studies regarding the relationship between SK-105/mineral spirits and CML/leukemia, <u>Id.</u> at p. 6; (3) Dr. Goldsmith based his conclusions on the Bradford Hill Criteria, relying on the same methodology he uses in his epidemiology classes; and (4) his opinions are based on reliable scientific evidence. <u>Id.</u> at pp. 10-11.

Given Dr. Goldsmith's *curriculum vitae*, the method and materials relied on to reach his conclusions, and all pertinent motions – including Safety-Kleen's Reply at Docket No. 123 – the motion *in limine* at Docket No. 93 must be DENIED.  Dr. Goldsmith's opinion would assist the trier of fact to better understand the evidence or to determine a fact in issue as required by Fed. R. Evid. 702.  Any gaps or flaws in his opinion may be elicited during direct and cross-examination.

(ii)      Su-Jung (Candace) Tsai (Docket No. 94)

Defendants move to exclude the testimony, opinions and reports of plaintiffs' expert Su-Jung Tsai.  In their response, plaintiffs indicate they have withdrawn Su-Jung Tsai from their experts' list (Docket No. 116).  In light of plaintiffs' representations, defendants' motion at Docket No. 94 is MOOT.

(iii)      Dr. Arthur Frank (Docket No. 95)

Defendants request the exclusion of plaintiffs' expert, Dr. Frank.  To that effect, they posit that (1) Dr. Frank considered the wrong substance in his report, inasmuch as SK-105 is not benzene, Docket No. 95 at p. 5; (2) the authorities on which he relies do not support his opinion that benzene can cause CML, Id. at p. 6; (3) he selectively picked studies favoring his conclusions while discarding the ones that did not, Id. at p. 8; (4) because CML has no known cause, differential diagnosis alone is insufficient to pass the Daubert scrutiny; (5) in any case, Dr. Frank's diagnosis employs an unreliable methodology as there is no support for the opinion that benzene can cause CML, Id. at pp. 9-10; and (6) he failed to consider the specific dose of benzene to which Campos was exposed, and cannot reliably rule out other potential sources of benzene apart from SK-105.  Id. at pp. 11-12.

Plaintiffs claim Dr. Frank – who holds a doctorate degree in biomedical sciences and lectures *inter alia* on benzene and its causal relationship to leukemia – is qualified to testify as to

the opinions he has rendered in this case (Docket No. 114 at p. 3).  They allege that (1) Dr. Frank need not have diagnosed a patient with CML in order to testify, as being a specialist in a particular discipline is not a prerequisite to render expert testimony related to that discipline, Id. at pp. 4-5; (2) he objectively evaluated all studies irrespective of the presence or absence of a relationship between benzene and CML, Id. at p. 6; (3) Dr. Frank's conclusions are supported by defendants' own causation expert, and there are several statistical studies linking benzene exposure to CML, Id. at p. 9; (4) Dr. Frank's opinion is predicated on a valid differential diagnosis; and (5) he had ruled in and ruled out other factors.  Id. at pp. 10-14.

Considering the arguments presented by both sides, it appears the core of defendants' arguments go to the weight and credibility of Dr. Frank's contemplated testimony.  Their contentions are more properly suited for cross-examination and presentation of contrary evidence. In all, his testimony would assist the trier of fact to better understand the evidence as required by Fed. R. Evid. 702.  Accordingly, defendants' request at Docket No. 95 must be DENIED.

(iv)    Melvyn Kopstein (Docket No. 97)

Defendants wish to exclude Dr. Kopstein's testimony.  In support of their request, they claim that (1) Dr. Kopstein lacks appropriate expertise with regards to analytical testing method for benzene, as well as material safety data sheet ("MSDS") and warnings' content, Docket No. 97 at pp. 9-12; (2) he used outdated, unreliable data in concluding the amount of benzene found in SK-105, a conclusion that according to defendants is belied by contemporary literature, plaintiffs' industrial hygienist – which has since been withdrawn from plaintiffs' expert list – and even Dr. Kopstein's prior testimony, Id. at pp. 13-16; (3) he made his exposure assessment after (a) relying on a contrived methodology, (b) selectively applying data from an unrelated simulation, and (c) ignoring empirical data related to the machine Campos worked with as well as SK-105, Id. at pp.

17-21; and (4) his testimony has been excluded by other district courts due to unreliable exposure assessment.  Id. at p. 22-24.

Plaintiffs oppose defendants' motion, claiming Dr. Kopstein's qualifications are grounded on his extensive chemistry and engineering background (Docket No. 118 at pp. 4-6).  To that end, they assert he is qualified to offer opinions about (1) Safety-Kleen's analytical method – SK-9211 – a non-published, non-peer-reviewed method, and (2) Safety-Kleen's material safety data sheets and labels.  Id. at pp. 7-8.  Similarly, they state that (1) the methods employed by Dr. Kopstein to reach his conclusions are reliable, because they have been peer-reviewed in two prior publications, which, in turn, have been cited by public agencies and others, Id. at pp. 9-10; and (2) the opinions cited by defendants, wherein Dr. Kopstein's testimony was excluded, are not applicable here and thus, unpersuasive.  Id. at pp. 13-14.

The Court has reviewed the parties' motions and related filings, including Dr. Kopstein's credentials, and believes his testimony may be helpful to the fact-finder in understanding the evidence and determining the facts.  So, defendants' request at Docket No. 97 must be DENIED.

(v)     Julie Panko (Docket No. 110)

Plaintiffs move to exclude the testimony of defendants' industrial hygienist.  They allege Ms. Panko misrepresented herself under oath as to the degree of collaboration that her colleagues Erin Shay and Josh Maskrey had in her report, Docket No. 110 at pp. 3-5; and characterize her report as unreliable because she failed to take into account the amount of benzene that Campos absorbed through his skin and the number of people that came in contact with the machine that Campos worked with.  According to plaintiffs, had she done so, the exposure values in her report would change.  Id. at pp. 5-6.  Finally, they assert Ms. Panko's refused to perform an exposure assessment calculation during her deposition.  For these reasons, plaintiffs request that (1) Ms.

Panko's testimony be excluded, and (2) sanctions be imposed against defendants pursuant to Fed. R. Civ. P. 37(c) and 26(a).

Defendants oppose plaintiffs' request (Docket No. 138), claiming the motion fails to bring forth a cognizable challenge to Ms. Panko's qualifications. Id. at p. 3. In this connection, they contend that (1) plaintiffs never addressed her knowledge, education, experience or background, Id. at pp. 4-7; and (2) plaintiffs' reliance on dermal modeling is misleading and off point at this juncture, as it is not an issue present before the Court and none of the applicable agencies require qualification of dermal exposures. Id. at pp. 9-11. They further request that plaintiffs' motion be denied on procedural grounds, for it was filed after the May 16, 2014 deadline for motions *in limine*. Relatedly, they move to deny plaintiffs' request for sanctions as they complied with Fed. R. Civ. P. 26 by disclosing Ms. Panko – not her assistants – as their expert witness. Id. at pp. 13-16. Finally, they consider plaintiffs' comments about Ms. Panko's alleged misrepresentations unsupported by the record and for the same reason, not an appropriate basis for sanctions. Id. at pp. 16-18. Plaintiffs replied (Docket No. 153).[4]

Plaintiffs' arguments are insufficient to exclude Ms. Panko's testimony. If they consider it appropriate, they may challenge her testimony through cross-examination and contrary evidence. For the same reason, the Court refrains from addressing the timeliness of plaintiffs' motion. Insofar as defendants properly disclosed Ms. Panko as their expert, plaintiffs' request for sanctions lacks support. Therefore, their motion at Docket No. 110 must be DENIED.

---

[4] In their reply, plaintiffs essentially rehash their original arguments discussed at Docket No. 110.

     (vi)    <u>Dr. Peter Shields</u> (Docket No. 111)

Plaintiffs ask for the exclusion of Dr. Shields (Docket No. 111). Along this line, they contend Dr. Shields previously testified – as part of a deposition in another case – that benzene exposure causes CML whereas here, Dr. Shields will testify that benzene does not cause CML. <u>Id.</u> at p. 3. Plaintiffs maintain Dr. Shields' contradicting testimonies bar him from rendering an opinion on the matter pursuant to <u>Daubert</u> and Fed. R. Evid. 702. <u>Id.</u> at pp. 4-5. Relatedly, they request entry of summary judgment in their favor because – in the event Dr. Shields' testimony is excluded – there would be no competent expert testimony defendants can offer to counter their two expert opinions on specific and general causation. <u>Id.</u> at p. 5. Defendants oppose plaintiffs' request in separate motions (Docket Nos. 139 and 144), plaintiffs replied (Docket No. 160), and defendants sur-replied (Docket No. 165).

After evaluating plaintiffs' motion and relevant filings, it appears their challenges are directed at Dr. Shields' conclusion rather than the steps and methodology he followed in order to reach it. As previously stated, the present inquiry's focus must be solely on principles and methodology, not on the conclusions that they generate. <u>Daubert</u>, 509 U.S. at 580. Therefore, plaintiffs' request that Dr. Shields' testimony be excluded must be DENIED. Likewise, since their motion for summary judgment is contingent upon exclusion of Dr. Shield's testimony, this request must also be DENIED. So considered, plaintiffs' motion at Docket No. 144 must be DENIED in its totality. Consistent with this ruling, defendants' request at Docket No. 139 for the Court to strike plaintiffs' exhibits in support of their motion for summary judgment must be DENIED AS MOOT.

## II.    Motions for Summary Judgment

### A.  STANDARD OF REVIEW

Safety Kleen and Makita move for summary judgment dismissing the claims against them, and plaintiffs for summary judgment against Makita.  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute is "genuine" if it could be resolved in favor of either party.  It is "material" if it potentially affects the outcome of the case in light of applicable law.  Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

### B.  DISCUSSION

(i)      Safety-Kleen's Motion for Summary Judgment (Docket No. 113)

Safety-Kleen requests summary judgment alleging that because neither exposure to benzene nor mineral spirits such as SK-105 is associated with CML, and because Daubert and its progeny preclude plaintiffs' causation experts from testifying, plaintiffs cannot satisfy their burden of proof.  In the alternative, it asks that partial summary judgment be entered as to (1) plaintiffs' strict liability warning and design defect claims, and (2) plaintiffs' request for future loss damages.

In support of its causation-related request, Safety-Kleen argues that (1) Dr. Frank and Dr. Goldsmith's conclusions are not supported by epidemiological literature, Id. at pp. 6-9; (2) there is no evidence in this case that SK-105 or similar solvents are capable of causing CML; (3) plaintiffs have presented no evidence that benzene exposures may cause CML, Id. at pp. 9-14; (4) plaintiffs failed to satisfy the element of foreseeability; and (5) Dr. Frank's purported evidence of specific causation does not raise a genuine issue of material fact.  Id. at pp. 14-16.

Gerardo Campos, et al. v. Safety Kleen Systems, Inc., et al.
Civil No. 12-1529 (PAD)
Memorandum and Order
Page 12

If the Court were to reject this line of argument, Safety-Kleen posits partial judgment should nevertheless be entered in its favor, arguing that (1) plaintiffs have offered no safer alternative design to its parts washer machine and SK-105 solvent, Id. at pp. 16-18; (2) because in its view, Dr. Kopstein's testimony should be excluded, plaintiffs lack a qualified warnings expert, and even if they did, they brought forth no evidence in support of their warning defect claim, Id. at pp. 19-22; (3) plaintiffs' claims for punitive damages fail as a matter of law, for punitive damages are not available in tort cases under Puerto Rico law, Id. at p. 22; and (4) since plaintiffs do not have evidence of future injuries, their claims for future loss earnings and medical expenses must fail. Id. at pp. 23-25.

After carefully evaluating Safety-Kleen's motion and relevant filings at Docket Nos. 135, 149, 150, 159, 163, the motion for summary judgment must be GRANTED IN PART, to the extent it seeks to dismiss plaintiffs' request for punitive damages.[5]  In connection with the request that summary judgment be entered as to all claims, however, Safety-Kleen's arguments are predicated on the same grounds as its motions in limine at Docket Nos. 93-95, and 97.  Those arguments were previously rejected, and for that reason need not be readdressed.

Pointing towards the design angle, plaintiffs maintain that coupled with expert testimony, Campos' version that while working, the machine constantly splashed the SK-105 solution into his person may be used as evidence that other safer designs were available.  If so, the issue would raise a credibility matter for the jury to resolve.  Likewise, they intend to rely on Dr. Kopstein's testimony to support their lack of warning action.  On this reading, the claim will not be dismissed

---

[5] As plaintiffs concede in their opposition at Docket No. 135, punitive damages are not recoverable under Puerto Rico law.

at this stage as whether or not the evidence to be presented and developed at trial is persuasive must be addressed to the jury.

Future loss and medical expenses raise a different problem.  Safety-Kleen argues that no evidence exists to support plaintiffs' claim on those items.  Plaintiffs allege otherwise.  To prove their point, they submit affidavits from Campos and Dr. María García, (his physician) (Docket No. 135, Exhs. 30-31).  Safety-Kleen has moved to exclude both affidavits pursuant to Fed. R. Civ. P. 37, claiming Campos and Dr. García were not announced as witnesses (Docket No. 149, Exh. 1 at p. 9-10).

While Campos was designated as a witness, it appears that Dr. García was not.  Yet plaintiffs assert her testimony need not be admissible at this point under Fed. R. Civ. P. 56(c), the purpose for which the affidavit was submitted.  However, the issue transcends summary judgment to arguably require exclusion of Dr. García's testimony at trial.  Notwithstanding the lack of prior designation, the Court will not exclude her testimony.  Considering that adjudication of pending motions does not finalize this case, the Court will provide defendants with the opportunity to depose Dr. García if they deem it appropriate.  They must do so not later than June 30, 2015.  With that window for discovery, Safety-Kleen's request to exclude testimony must be DENIED.

At Docket No. 150, Safety-Kleen moves to exclude information, exhibits, and testimony plaintiffs submitted in opposition to Safety-Kleen's motion for summary judgment.  The issues it raises have the potential of impacting trial work, and hence, will be addressed at this juncture to facilitate trial preparation.

First, Safety-Kleen requests the Court to strike plaintiffs' references to the warning issued pursuant to California Code of Regulations, Title 22 (referred to as "Prop 65") under Fed. R. Evid. 401, 402, 403, because plaintiffs cannot rely on this warning to provide evidence of causation.

Gerardo Campos, *et al.* v. Safety Kleen Systems, Inc., *et al.*
Civil No. 12-1529 (PAD)
Memorandum and Order
Page 14

Even though government agencies' "threshold of proof is reasonably lower than that appropriate in tort law," Mitchell v. Gencorp Inc., 165 F.3d 778, 783 (10th Cir. 1999), the warning has probative value here. See, Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action"). That value would not seem to be substantially outweighed by any of the elements to which Fed. R. Evid. 403 refers. To the extent plaintiffs do not seek to rely solely on this warning to provide causation, Safety-Kleen's request must be DENIED.

Second, Safety-Kleen requests that any reference to Dr. Shields' prior testimony be excluded under Fed. R. Evid. 401, 402, 403, as it was given in a non-related case. This request must also be DENIED. There is no sufficient reason why this information cannot be evaluated by the jury along with any other evidence pertaining to the credibility of the witness. Thus, the content of the testimony may be tested during direct and cross examination.

Third, Safety-Kleen asks for the exclusion of plaintiffs' exhibits 5-16 – a series of online publications. Plaintiffs' oppose this request, claiming such publications constitute treaties and as such, should be allowed under Fed. R. Evid. 803(18) and (22).[6] Safety-Kleen contends the documents do not fall under those exceptions, for they were not relied on by plaintiffs' expert.

Fed. R. Evid. 803(18) provides a hearsay exception for what are known as "learned treatises," i.e., for a statement contained in a treatise, periodical, or pamphlet, if the publication is established as reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice. To establish a proper foundation, the proponent must show that

---

[6] Fed. R. Evid. 803(22) does not seem to have any link to this case, as it contains a hearsay exception for evidence of previous convictions.

the author of the treatise or article in question is an authority.  See, Twin City Fire Ins. Co. v. Country Mut. Ins. Co., 23 F.3d 1175, 1184 (7th Cir. 1994)(No proper foundation was laid for the use of the article in cross examination.  It is not enough that the journal in which it appeared was reputable; the author of the particular article had to be shown to be an authority before the article could be used consistent with 803(18)); Meschino v. North American Drager, Inc., 841 F.2d 429, 434 (1st Cir. 1988)(articles published in trade magazine found inadmissible because not shown to be reliable; mere publication is not enough).  The record is devoid of information as to the author or source of the exhibits to justify their admissibility.

Moreover, the exception applies only to materials that have been called to the attention of an expert witness on cross examination or relied on by the expert on direct examination.  The requirement is designed to ensure that the materials are used only under the chaperonage of an expert to assist and explain in applying them.  To this end, admission is proper only when an expert is given an opportunity to rebut or explain the material, to give a reaction to the work and the basis for this reaction.  See, U.S. v. Turner, 104 F.3d 217, 221 (8th Cir. 1997)(barring counsel from reading to jury from medical texts because proponent provided no expert testimony establishing texts as authoritative); Dartez v. Fibreboard Corp., 765 F.2d 456, 465 (5th Cir. 1985)(admission of articles improper where expert did not testify regarding articles).[7]  From plaintiffs' motions at Docket Nos. 135 and 159, it is not entirely clear those requirements were complied with.  On this basis, Safety-Kleen's request as to online publications must be GRANTED.  Should plaintiffs be interested in having those exhibits admitted at trial, they must satisfy the rule's criteria for admissibility.

---

[7] See also, 5 Weinstein's Federal Evidence § 803.20 (2d Ed. 2014)(Rel.103-4/2012 Pub.803), and Weissenberger's Federal Evidence §§ 803.70-803.73 (7th Ed. 2011).

    (ii)    <u>Plaintiffs' Motion for Summary Judgment against Makita</u> (Docket No. 109)

Plaintiffs contend summary judgment against Makita must be entered in their favor. They claim Makita failed (1) to provide training and safety handling instruction to the employees who dealt with chemicals; (2) to provide adequate safety equipment or proper working conditions; and (3) to list any potential witness or report that would suggest it took steps required to protect Campos' safety.

Makita filed an opposition to plaintiffs' request (Docket No. 136), essentially arguing that plaintiffs failed to address all but one of the elements required by Puerto Rico law to establish negligence against it.[8] The point is valid, for absence of an element critical to establish liability does not allow liability to be imposed. Similarly, this will be a joint trial. The evidence announced by Safety-Kleen is sufficient on its face, if believed by the jury, to defeat liability. Accordingly, plaintiffs' motion at Docket No. 109 must be DENIED.

    (iii)    <u>Makita's Motion for Summary Judgment</u> (Docket No. 99)

Makita claims plaintiffs are contractually precluded from pursuing this case. Campos was employed by Makita from December 4, 1995 until April 30, 2005. When he ended his employment, he executed a "Confidential Negotiated Settlement Agreement and Release of all Claims" pursuant to which he agreed to terminate his employment relationship with Makita, releasing Makita from all claims related to or arising of his employment – including tort claims – in exchange for a monetary compensation. Campos had legal counsel when he executed the

---

[8] Generally, that (1) Makita knew or should have known SK-105 could cause the medical condition; (2) such knowledge required Makita to take measures or provide instructions to Campos; (3) Campos was not afforded such instructions or measures; (4) the absence of such instructions or measures dangerously exposed to SK-105; (5) such exposure caused Campos' medical condition; and (6) Makita therefore is liable for the resulting damages (Docket No. 136 at pp. 6-7).

agreement, and his attorney executed the agreement as well.  Based on the agreement, Makita seeks dismissal of all claims against it (Docket No. 99 at p. 12).

Plaintiffs oppose dismissal, arguing the agreement was executed in connection with a charge filed with the Equal Employment Opportunity Commission which had nothing to do with any tort claim; that the agreement was executed in 2005 and Campos was not diagnosed with leukemia until 2011; and thus, that the agreement cannot bar the tort claims filed in this case (Docket No. 105 at pp. 1-10).

The agreement between Campos and Makita states that the amounts to be paid as provided in paragraph one (1) settle in full, final and absolute manner all of Campos' claims that may arise out of or be directly or indirectly related in any way to his employment with the Company (Makita) or the termination thereof (Docket No. 99, Exh. 3 at ¶ 4).  Likewise, in it, Campos fully releases the Company from any claim of any kind, including but not limited to those related to or arising from Campos' employment with the Company and/or his work for the Company under any applicable law or regulation, including any claim or possible cause of action at law or equity against the Company (Id. at ¶ 6).

In line with this provision, the agreement states that the causes of action against the Company which Campos forever waives include, but are not limited to any claim for alleged damages under Articles 1802 and/or 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 §§ 5141-5142 (Docket No. 99, Exh. 3 at ¶ 4).  Moreover, it provides that by signing the agreement, Campos released the Company and gave up all present and past rights and claims against the Company, including those not mentioned in the agreement, except vested benefits deriving from any pension or retirement plan sponsored by the Company in which Campos was a participant as of his separation from employment (Id. at ¶ 7).

Obligations arising from contracts have legal force, and must be fulfilled in accordance with their terms.  Article 1044 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31 § 2994.   They include obligations stemming from settlement agreements, which the Civil Code recognizes as valid contracts.  P.R. Laws. Ann. tit. 31 §§ 4821-4827; Neca Mortg. Corp. v. A & W Dev. S.E., 137 D.P.R. 860, 870-871, 874-876 (1995).  When contracts are clear and unambiguous, they must be applied and enforced as written.  Marina Aguila v. Den Caribbean, Inc., 490 F.Supp.2d 244, 249 (D.P.R. 2007); Fernández-Fernández v. Municipality of Bayamón, 942 F.Supp. 89, 94 (D.P.R. 1996).

Such is the case here.  The agreement unambiguously precludes Campos from pursuing damages actions against Makita under Articles 1802 and 1803 of the Puerto Rico Civil Code.  Conversely, it does not exclude such actions as it could have done, and as was done in connection with other subjects, in paragraph 7 of the agreement.

Makita argues that coplaintiffs are precluded from pursuing any claim against Makita because in its view, the claim of the spouse is contingent, that is, it depends on her spouse prevailing on his claim, and if the claim of the spouse is contingent, the claim of the minor descendant is necessarily contingent as well (Docket No. 99 at p. 10).  In this context, contingency is a function of labor and employment law.

To the extent that a specific labor or employment law covers the conduct for which a plaintiff seeks damages, he is barred from using the same conduct to also bring a claim under Article 1802.[9]  Pagán-Colón v. Walgreens, 190 D.P.R. 251 (2014); Nieves Pérez v. Doctors' Center Bayamón, 2011 WL 1843057, *7 (D.P.R. May 16, 2011); Rosario v. McConnell Valdes,

---

[9] In Muñoz v. Sociedad Española de Auxilio Mutuo, 671 F.3d 49, 59-60 (1st Cir. 2012), the First Circuit noted but declined to discuss the issue because defendant had waived it under Fed. R. Civ. P. 50(b), and in the Court's view, the issue did not qualify for plain error review.

2008 WL 509204, *2 (D.P.R. Feb. 21, 2008).  Thus, the remedies available to the employee for violation of labor statutes will be the remedies established in the statute prohibiting the conduct complained of.

In contrast to employees, the Puerto Rico Supreme Court permits relatives of a person who has been the victim of employment discrimination to bring emotional damage claims under Article 1802, to be compensated for harm to them resulting from discrimination.  Pagán-Cólon v. Walgreens of San Patricio, Inc., 697 F.3d 1, 16 (1st Cir. 2012).  Such claims are considered contingent upon, and cannot survive independently of the principal plaintiff's underlying employment discrimination or retaliation action.  If the principal plaintiff's claim fails, so too does the relative's derivative claim.  Cabán-Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 12-13 (1st Cir. 2007); Marcano Rivera v. Pueblo Intern., Inc., 232 F.3d 245, 258 n. 7 (1st Cir. 2000); Marrero v. Schindler Elevator Corp., 494 F.Supp.2d 102, 112 (D.P.R. 2007).

So far as Makita has argued, Campos is not pursuing remedies under any labor or employment statute but under Article 1802 of the Civil Code – Puerto Rico's general tort statute. From that perspective, the relatives' claims are not contingent as the term has been developed, to permit relatives to seek remedies against employers or former employers under labor employment legislation.  Consequently, they are at liberty to sue Makita for their own damages notwithstanding Campos' contractual prohibition to do so.

Makita alleges the relatives' action should be dismissed because to prove their claims, they would need Campos' testimony, and paragraph 19 of the agreement prohibits Campos from testifying against Makita (Docket No. 99 at pp. 10-11).  Paragraph 19 specifies that Campos "will not declare, give testimony or evidence, or serve as a witness against the Company in any court of law, administrative agency or hearing, or any local or federal forum, unless he is subpoenaed or

ordered to do so by an entity of competent jurisdiction and with authority." (Docket No. 99, Exh.

3 at ¶ 19).  The Court has that authority, and will exercise it.  Campos, then, is not precluded from

testifying against Makita in this action.[10]

### III.    <u>CONCLUSION</u>

For the reasons stated:

- "Defendant Safety-Kleen Systems, Inc.'s Motion to Exclude the Testimony, Opinions, and Report of David F. Dr. Goldsmith, Ph.D." (Docket No. 93) is DENIED.

- "Defendant Safety-Kleen Systems, Inc.'s Motion to Exclude the Testimony, Opinions, and Report of Su-Jung (Candace) Tsai, Sc.D." (Docket No. 94) is DENIED as MOOT.

- "Defendant Safety-Kleen Systems, Inc.'s Motion in Limine to Preclude the Testimony, Opinions, and Report of Dr. Arthur Frank" (Docket No. 95) is DENIED.

- "Defendant Safety-Kleen Systems, Inc.'s Motion to Exclude the Testimony, Opinions, and Report of Melvyn Kopstein, Ph.D." (Docket No. 97) is DENIED.

- Co-defendant Makita USA's "Motion for Summary Judgment and Memorandum of Law in Support" (Docket No. 99) is GRANTED IN PART AND DENIED IN PART.

- Plaintiffs' "Motion for Summary Judgment against Makita" (Docket No. 109) is DENIED.

- "Plaintiffs' Motion to Exclude the Testimony of Julie Panko and Motion for Sanctions" (Docket No. 110) is DENIED.

---

[10]  The absence of this "subpoena-order" authorization mechanism would have made the clause void.  A promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement.  That harm would be apparent if a person with information relevant to a judicial proceeding were prevented from testifying at risk of violating a contract.  <u>See</u>, <u>Lane</u> v. <u>Franks</u>, ---U.S.---, 134 S. Ct. 2369, 2379 (2014)(noting importance of sworn testimony in judicial proceedings); <u>EEOC</u> v. <u>Astra U.S.A., Inc.</u>, 94 F.3d 738, 743-745 (1st Cir. 1996)(invalidating covenant not to assist EEOC); <u>Hamad</u> v. <u>Graphic Arts Center, Inc.</u>, 1997 WL 12955, * 2 (D. Or. January 3, 1997)(permitting witness to testify at deposition in case filed against former employer despite settlement agreement arguably prohibiting him from doing so).

- Plaintiffs' "Motion for Summary Judgment/Motion to Strike Dr. Peter Shields under Federal Rule of Evidence 702 and Daubert" (Docket No. 111) is DENIED.

- "Defendant Safety-Kleen Systems, Inc.'s Motion for Summary Judgment" (Docket No. 113) is GRANTED IN PART AND DENIED IN PART.  Plaintiffs' punitive damages claims are DISMISSED.

- "Defendant Safety-Kleen Systems, Inc.'s Request for Leave to File Objection to Plaintiffs' Motion to Exclude the Testimony of Julie Panko and Motion for Sanctions in Excess of the 15 Page-Limit set by Local Rules" (Docket No. 137) is GRANTED.

- "Defendant Safety-Kleen Systems, Inc.'s Evidentiary Objections to Evidence and Motion to Strike Evidence in Support of Plaintiffs' Motion for Summary Judgment/Objection to Motion to Strike Dr. Peter Shields under Federal Rule of Evidence 702 and Daubert" (Docket No. 139) is DENIED as MOOT.

- "Defendant Safety-Kleen Systems, Inc.'s Objections to Evidence and Motion to Strike Evidence in Support of Plaintiffs' Response in Opposition to Defendant's, Safety-Kleen System Inc.'s, Motion for Summary Judgment" (Docket No. 150) is GRANTED IN PART AND DENIED IN PART.

**SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2015.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge