**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **GERARDO CAMPOS, <u>et al.</u>** | |
| **Plaintiffs,** | |
| **v.** | **CIVIL NO. 12-1529 (PAD)** |
| **SAFETY-KLEEN SYSTEMS, INC. <u>et al.</u>,** | |
| **Defendant.** | |

**OMNIBUS MEMORANDUM AND ORDER**

Delgado-Hernández, District Judge.

Gerardo Campos, his wife, Yadira Veguilla-Rosario, their conjugal partnership, and their minor child C.C.V initiated the instant action against Safety-Kleen Systems, Inc.; Makita USA, Inc.; National Rental and Sales, Inc.; and Tool Box, Inc., seeking redress for damages arising out of Campos' alleged exposure to a chemical agent ("SK-105"), which supposedly led him to develop chronic myelogenous leukemia ("CML").[1]   Safety-Kleen denies liability.   After the Pretrial Conference, various motions were filed between October 30, 2015 and December 11, 2015.  Before the Court are:

- "Plaintiffs' Motion in Limine as to Fact Witness Dr. María García, Plaintiff's Treating Physician" (Docket No. 212); which defendant opposed (Docket No. 228); and plaintiffs replied (Docket No. 230).  The motion is DENIED (pp. 3).

- Plaintiffs' "Motion in Limine and Plaintiff's Objections as to Defendant's Exhibits" (Docket No. 213); which defendant opposed (Docket No. 227); and plaintiffs replied

---

[1]  Subsequently, partial judgments were entered dismissing plaintiffs' claims against National Rental and Sales, Inc., Tool Box, Inc., and Makita USA, Inc. (Docket Nos. 44, 52 and 190, respectively).  Therefore, Safety-Kleen is the sole remaining defendant.

(Docket No. 231).  The motion is GRANTED IN PART AND DENIED IN PART (pp. 4-7).

- "Defendant Safety-Kleen Systems, Inc.'s Objections to Plaintiffs' Witness List" (Docket No. 215); which plaintiffs opposed (Docket No. 224); and defendant replied (Docket No. 232).  The motion is MOOT IN PART AND DENIED WITHOUT PREJUDICE IN PART (pp. 7-8).

- "Defendant Safety-Kleen Systems, Inc.'s Objections to Plaintiffs' Exhibit List" (Docket No. 222); which plaintiffs opposed (Docket No. 226); and defendant replied (Docket No. 237).  The motion is DENIED WITHOUT PREJUDICE (p. 8-9).

- "Defendant Safety-Kleen Systems, Inc.'s Motion in Limine" (Docket No. 223); which plaintiffs opposed (Docket No. 225); and defendant replied (Docket No. 238).  The motion is GRANTED IN PART AND DENIED IN PART (pp. 9-16).

- "Plaintiffs' Motion to Exclude the Deposition of Dr. María García Pallas, and Objections and Counter Designations to Defendant's Deposition Designations of María García Pallas" (Docket No. 244).  The motion is GRANTED (p. 16-17).

- "Plaintiffs Response to Defendant's Deposition Designations of Dr. Tsai and Motion to Exclude Same." (Docket No. 245).  The motion is GRANTED (p. 16).

- "Defendant Safety-Kleen Systems, Inc.'s Objections and Counter-Designations to Plaintiffs' Deposition Designations for Use at Trial" (Docket No. 248).  The motion is GRANTED (pp. 17-18).

The net result of these rulings appears in the Conclusion, at pages 18-21.

# I.    DISCUSSION

## A.  Plaintiffs' Motion in Limine at Docket No. 212

Plaintiffs seek to enjoin Safety-Kleen from relying on Dr. María García's testimony in order to establish that there are no known causes of CML.  To that end, they aver that Dr. García (1) was designated as a fact witness as opposed to an expert; (2) testified not having reviewed the relevant data on the subject; and (3) also testified that she would defer the causation opinion to experts who have studied the issue in depth.

Safety-Kleen counters that (1) plaintiffs originally designated Dr. García to, *inter alia*, "testify as to the relation between Mr. Campos' CML diagnosis and his exposure to benzene, and that his CML is causally related to his exposure" (Docket No. 199, Exh. 1 at p. 8); (2) to the extent Gerardo Campos previously testified that Dr. García told him benzene exposure caused CML, but she subsequently denied having made any such statement, her testimony could be used to impeach Campos' credibility; (3) as a treating physician, Dr. García possesses specialized knowledge and thus, need not be considered a Rule 26 expert; and (4) plaintiffs' Fed.R.Evid. 702 challenge is untimely but nevertheless fails to address all relevant factors that such challenges should include.

After evaluating the parties' arguments, plaintiffs' motion must be DENIED.  First, it appears plaintiffs intended Dr. García to testify on matters pertaining to Campos' exposure to benzene, and his subsequent CML diagnosis.  See, Plaintiffs' Rule 26 initial Disclosure filed at Docket No. 199, Exh. 1 at p. 8.  Second, that she failed to review the relevant data on causation, or that she rather leave that opinion to the experts, may be elicited during cross-examination.  As such, it goes to the weight ultimately given to her testimony.

B. **Plaintiffs' Motion in Limine at Docket No. 213**

Plaintiffs seek to exclude any (1) exhibit pertaining to collateral sources such as social security disability, medical, and insurance records; (2) documents on smoking; (3) expert reports and corresponding *curriculum vitae*; (4) service records from Makita and National Tools; (5) Scientific articles and studies; (6) Video of Fedoruk Study; (7) exhibits pertaining to the International Agency for Research on Cancer ("IARC"); and (8) EPA's and Safety-Kleen's 9211 methods.

In turn, Safety-Kleen posits that (1) the evidence of collateral sources is admissible for purposes other than reducing the amount of any recovery; (2) the documents on smoking are relevant, as expert Dr. Shields relied on them in order to demonstrate how the smoking-lung cancer relationship fulfills every criteria of Bradford-Hill, while there is insufficient data to satisfy such criteria for benzene exposure and CML; (3) it does not oppose to the exclusion of expert reports and *curriculum vitae* so long as the preclusion applies equally to all experts; (4) the service records are relevant to Campos' benzene exposure assessment, and plaintiffs' request is contrary to their stipulation included in their Pretrial Report; (5) it does not oppose to the exclusion of the scientific articles and studies so long as they are allowed to be read into evidence but not received as exhibits, but, to the extent the motion seeks relief beyond Rule 803(18), then it should be denied; (6) the Video of Fedoruk Study is relevant, inasmuch as plaintiffs' own expert, Melvyn Kopstein, relies on it and thus, it should be allowed, unless plaintiffs withdraw Kopstein's exposure assessment; (7) the portions of IARC are relevant and the grounds on which plaintiffs rely to exclude them are misplaced; and (8) plaintiffs' request in connection with EPA methods should be denied as an

untimely <u>Daubert</u> challenge, and because expert for both parties relied on them to reach conclusions.[2]

      The collateral source doctrine, "as a general rule, bars a tort-feasor from deducting, from the amount of the corresponding indemnity, the compensation or benefits which the prejudiced party may have received from a third person or entity, this is, from a source not related with the defendant, denominated collateral source rule." <u>Futurama Import Corp.</u> v. <u>Trans Caribbean</u>, 104 D.P.R. 609 (1976).  "However, the rule is not absolute and courts have carved out exceptions to the collateral source doctrine."  <u>See</u>, <u>McGrath</u> v. <u>Consol. Rail Corp.</u>, 136 F.3d 838, 840 (1st Cir. 1998)(and cases cited therein).  With this in mind, the materials plaintiffs seek to exclude will be admissible so long as Safety-Kleen does not rely on the records in order to offset or mitigate any award that the jury may ultimately award.[3]  To the extent that Safety-Kleen contends that its expert, Dr. Shields, relied on the documents pertaining to smoking in order to reach his conclusions – an assertion that plaintiffs do not contest – plaintiffs' request that any such documents be excluded must be DENIED.

      Safety-Kleen does not oppose plaintiffs' request that the expert reports and their corresponding *curriculum vitae* be excluded, so long as neither party is allowed to present any such documents.  That request will be accordingly GRANTED.  <u>See e.g.</u>, <u>Cash Energy, Inc.</u> v. <u>Weiner</u>, 81 F.3d 147, n. 7 (1st Cir. 1996)(holding that an expert report is inadmissible hearsay).

---

[2] In their reply, plaintiffs fail to address all but one of defendants' arguments, to wit: the collateral source exclusion.

[3] For example, Safety-Kleen states it will rely on such documents to demonstrate the amount of medical expenses Campos has incurred in connection with his CML diagnosis as opposed to his medical bills pertaining to his pre-existing condition of Charcot-Marie-Tooth disease.  In addition, it claims these documents are pertinent as they show his earning history, which in turn, is relevant to counter his future lost earnings.  And finally, Safety-Kleen contends that the documents, which include Campos' attendance record, are relevant to his benzene exposure allegations, because if he was absent from work, he was not being exposed to the solvent. Against this background, the documents appear to be relevant and their potential probative value not substantially outweighed by any of the elements included in Fed.R.Evid. 403.

Plaintiffs request that Makita and National Tools' service records be excluded under Fed.R.Evid. 403 must be DENIED.  Foremost, those documents appear to have been stipulated in the Pretrial Report.  <u>See</u>, Docket No. 207 at p. 37, section X(B).  In addition, such records are relevant here, and their potential probative value is not substantially outweighed by any of the elements to which Fed.R.Evid. 403 refers.

Plaintiffs request that the statements of scientific articles and studies which Safety-Kleen intends to rely on be excluded under Fed.R.Evid. 803(18).  Safety-Kleen does not oppose that request so long as it is allowed to read those materials into evidence but that they not be received as exhibits.  For the reasons previously expounded in this court's Memorandum and Order, plaintiffs' request is granted.  <u>See</u>, Docket No. 171 at pp. 14-15, and cases cited therein.  Accordingly, Safety-Kleen may not read the materials into evidence, nor may it introduce them as exhibits during trial, unless it complies with the criteria included in the court's Memorandum and Order.  <u>Id.</u>

The court notes that plaintiffs' expert, Melvyn Kopstein, relied on the Fedoruk simulation, a video of which they now seek to enjoin Safety-Kleen from presenting as evidence.  And Safety-Kleen previously moved to exclude such expert, *inter alia*, on the basis that Kopstein's use of Fedoruk's data and substantial dissimilarities in the machine and working conditions fell short of <u>Daubert's</u> reliability and relevance requirements (that is, to some extent, the same basis on which plaintiffs now predicate their request).  Yet the court already considered and denied those arguments in its Memorandum and Order (Docket No. 171 at pp. 7-8).  It need not deviate from that ruling at this point.  Accordingly, plaintiffs' request on this ground must be DENIED.  Safety-Kleen may rely on the Video of Fedoruk Study, but only during the cross-examination of Melvyn Kopstein.

Plaintiffs contend that the portions of IARC, which Safety-Kleen intends to use as evidence should be excluded on relevance grounds.  Safety-Kleen counters the portions are relevant, as IARC has evaluated and classified mineral spirits as not being carcinogenic to humans. Plaintiffs did not respond to these arguments.  As such, and because Safety-Kleen's representations demonstrate the documents may be relevant at trial, the request that they be excluded on those grounds must be DENIED.

Lastly, plaintiffs seek to exclude any reference by Safety-Kleen to EPA methods as well as SK Method 9211.  The request is predicated on Fed.R.Civ.P. 403, for according to plaintiffs, such methods are relied on to determine certain levels of benzene in waste and not in solutions such as SK 105; and also, that Safety-Kleen allegedly destroyed relevant information pertaining to the methods plaintiffs seek to exclude.  But Safety-Kleen avers – and again, plaintiffs do not contest these assertions – that (1) plaintiffs' request amounts to an untimely Daubert challenge; (2) these methods were relied by two of its experts, which plaintiffs chose not to depose; and (3) the email attached to plaintiffs' motion constitutes inadmissible hearsay.  Foremost, during the Pretrial Conference, and after granting the parties extensive time to do so, the court barred the parties from presenting any additional Daubert challenges (Docket No. 208 at ¶ 9).  As such, and in light of Safety-Kleen's uncontested representations, plaintiffs' request must be DENIED.  On that basis, the EPA and SK Methods will be admissible so long as they are brought through expert testimony.

## C.  Safety-Kleen's Objections to Plaintiffs' Witness List at Docket No. 215

Safety-Kleen objects to plaintiffs' designation of (1) several of Gerardo Campos' co-workers, who were never properly identified; (2) ten (10) of plaintiffs' family, friends and work supervisors on cumulative and inflammatory grounds; and (3) the deposition testimony of Safety-Kleen employees and former employees given in other cases.

Plaintiffs aver that they will not call any of the witnesses not previously announced.  Also, they claim they will only call two (2) to three (3) family members/friends/work supervisors and focus each witnesses' testimony so as to limit cumulativeness.  In connection with the deposition testimony of Safety-Kleen employees and former employees in other cases, plaintiffs request that the court defer ruling until such time as the designations are filed so that the court has enough information on the witnesses being offered.

After evaluating Safety-Kleen's motion and relevant filings, the same is MOOT IN PART and must be DENIED WITHOUT PREJUDICE IN PART.   Safety-Kleen may restate its cumulative/inflammatory arguments at the time plaintiffs call their family members/friends/work supervisors as witnesses.  The court will evaluate whether exclusion of the deposition testimony of employees and past employees is warranted upon evaluating plaintiffs' deposition designations for use at trial at Docket No. 242, and Safety-Kleen's corresponding objections at Docket No. 248.

### D.  Safety-Kleen's Objections to Plaintiffs' Exhibit List at Docket No. 222

Safety-Kleen seeks to exclude more than two hundred and sixty (260) purported exhibits from plaintiffs' list.  Plaintiffs, in turn, request that these objections be ruled upon at the time of trial, so that the court has the complete context in which plaintiffs seek to have the corresponding documents admitted.   After evaluating Safety-Kleen's motion, plaintiffs' opposition and the former's reply, it is apparent that some of the documents plaintiffs included in their list are not admissible as evidence.   However, more context is needed in order to rule on the remaining evidentiary challenges set forth by Safety-Kleen.   As such, the motion will be DENIED WITHOUT PREJUDICE of being reiterated during trial, at which time the court will determine whether the purported plaintiffs exhibit is admissible or not.   See, Jackson v. City of Gahanna, No. C2:08-CV-0068, 2011 WL 587283, at *2 (S.D. Ohio Feb. 9, 2011)(holding that "[i]f the Court

does deny a motion in limine … the Court can reconsider the admissibility of the evidence as the proceedings give context to the pretrial objections").

   **E.   <u>Safety-Kleen's Motion in Limine at Docket No. 223</u>**

   Safety-Kleen moves for an order barring the plaintiffs from mentioning during trial (1) any reference to constituents of SK 105 not alleged to have caused Campos' CML; (2) the solvent recycling process, and Safety-Kleen's continental United States operations and recycling centers; (3) any allegation that recycled SK 105 is banned in the United States; (4) future medical expenses; (5) future lost earnings; (6) dermal exposure and modeling; (7) safer alternative design; (8) duty to warn beyond federal standards; (9) California's Proposition 65; (10) case reports and irrelevant studies; (11) inferences of causation based on an alleged association between benzene and diseases Mr. Campos does not have; (12) irrelevant parts washer machines and related materials; (13) other suits or claims; (14) irrelevant corporate conduct; (15) unpled and dismissed causes of action; (16) undisclosed expert opinions; (17) testimony of Safety-Kleen employees/former employees in other cases; (18) Shields' testimony in <u>Batton</u> v. <u>CSX</u>; (19) Safety-Kleen's wealth, size, profits, location or monies spent in litigation; (20) insurance; (21) settlement discussions; and (22) relief sought throughout case.  Plaintiffs acquiesced to the exclusion of some matters mentioned above, and opposed the exclusion of others.  The court addresses each challenge in turn.

   (1)     Since plaintiffs certified they will not make references to constituents of SK 105 not alleged to have caused Campos' CML, Safety-Kleen's request that any such comments be barred must be GRANTED.

   (2)     Plaintiffs object to Safety-Kleen's request that they be precluded from making comments pertaining to the recycled SK 105 or the recycling process.  In that regard, they rely on one of Safety-Kleen's expert's deposition, wherein he allegedly testified there are no significant

differences in the benzene content between recycled and virgin SK 105.  But in his deposition, the expert also asserted that there are differences between the products, namely, in their chlorinated hydrocarbon content.  See, Docket No. 225, Exh. 1, 18:18-22.  What is more, Campos was never exposed to the recycled form SK 105, insofar as no such product was purchased by the company where he worked during the time he was exposed to SK 105.  In the end, plaintiffs' claims are predicated on Campos' alleged exposure to virgin SK 105 solution and how it led him to develop CML.  Given these circumstances, Safety-Kleen's request that plaintiffs be enjoined from making comments pertaining to the recycled SK 105 or the recycling process must be GRANTED on relevance grounds.  See, Fed.R.Evid. 401.[4]

(3)     For that same reason, Safety-Kleen's request to prohibit any allegation that recycled SK 105 is banned in the United States must also be GRANTED.

(4)     Safety-Kleen moves to exclude any testimony pertaining to Campos' future medical expenses.  Its request is grounded on the fact that Dr. García's opinion is speculative, and that she rendered it after the discovery period had elapsed.  But the court previously allowed plaintiffs to designate Dr. García for precisely such purposes (Docket No. 171 at p. 13).  And whether her opinion and the grounds upon which it is based are in fact speculative may be elicited during her cross-examination.  As such, this request must be DENIED.

(5)     Safety-Kleen moves to exclude any reference to Campos' future loss of earnings, for in its view, plaintiff failed to quantify such amounts through Fed.R.Civ.P. 26 disclosures prior to the closing of discovery and have designated no expert to discuss any such losses.  Yet Campos was designated as a witness by plaintiffs.  He may testify whether, due to his condition, he is able

---

[4] Even if somehow relevant, its potential probative value is substantially outweighed by all of the elements to which Fed.R.Evid. 403 refers.

Gerardo Campos, *et al.* v. Safety Kleen Systems, Inc., *et al.*
Civil No. 12-1529 (PAD)
Omnibus Memorandum and Order
Page 11

to work or not.  Also in support of their loss future earning claim, plaintiffs intend to submit

Campos' tax returns for the years prior to his CML diagnosis.  Given these circumstances, Safety-

Kleen's request must be DENIED.

(6)     Safety-Kleen requests that any mention of Campos' dermal exposure be excluded,

for plaintiffs' experts provided no opinions or testimony pertaining to that type of exposure.  In

turn, plaintiffs posit that because Campos testified in his deposition that while working, SK 105

splashed on his skin, and since defense experts never factored the additional exposure through skin

contact, they should be able cross examine such experts on how Campos' skin contact with SK

105 would affect their exposure calculations.  Along the same line, plaintiffs claim that their

experts should be able to render an opinion on how skin contact constituted another way of

exposure.  In a toxic tort case such as this one, plaintiffs must prove level of exposure through

expert testimony, using techniques subject to objective, independent validation in the scientific

community.  At a minimum, expert testimony should include a description of the method used to

arrive at level of exposure and scientific data supporting the determination.  See e.g., Mitchell v.

Gencorp Inc., 165 F.3d 778 (10th Cir. 1999)(so noting).  "Scientific knowledge of the harmful

level of exposure to a chemical plus knowledge that plaintiff was exposed to such quantities are

minimal facts necessary to sustain the plaintiff's burden in a toxic tort case." Allen v. Pennsylvania

Engineering Corp., 102 F.3d 194, 199 (5th Cir. 1996).  However, plaintiffs' experts failed to take

into account Campos' exposure to SK 105 through skin contact.  They cannot attempt to do so at

this late stage.  Therefore, Safety-Kleen's request must be GRANTED.

(7)     Safety-Kleen argues that plaintiffs should be enjoined from making any reference

to safer alternative designs insofar as such claims need to be established through expert testimony,

and plaintiffs' lack any such expert.  Plaintiffs contend their expert Melvyn Kopstein testified that

the material safety data sheet for SK 105 was inadequate, and had it included the appropriate warning for the solvent, it would amount to a safer alternative design.  But these allegations seem to be better suited in support of their failure to warn/warning defect claim.  Without any expert testimony, plaintiffs cannot establish an alternate, safer design and meet their burden of proof.  See, Fremaint v. Ford Motor Co., 258 F.Supp.2d 24, 30 (D.P.R. 2003)(so noting).  Given these circumstances, Safety-Kleen's request must be GRANTED.

(8)     Safety-Kleen also moves to exclude any evidence or arguments made by plaintiffs suggesting that its duty to warn extends beyond the requirements imposed by federal standards.  Plaintiffs object, and unlike Safety-Kleen, cite no authority in support.  At any rate, "[a] detailed scheme of federal statutes and regulations governs the handling and labeling of hazardous substances."  Torres-Rios v. LPS Labs., Inc., 152 F.3d 11, 13 (1st Cir. 1998)(citing 15 U.S.C. §§ 1261-1277 (Federal Hazardous Substances Act); 29 C.F.R. § 1910.1200 (governing hazard communication in the workplace); and 16 C.F.R. § 1500.121 (requirements for safety warnings)).  "These provisions are designed to set a comprehensive standard for workplace safety, and to preempt any legal requirements of a state, or political subdivision of a state, pertaining to this subject."  Id. (citing 29 C.F.R. § 1910.1200(a)(1), (2), and §1910.1200(a)(2)).  With this in mind, plaintiffs' failure to warn claim will be measured against the above-mentioned criteria only.  To the extent it seeks to enjoin plaintiffs from relying on any other standard apart from the ones previously cited, Safety-Kleen's request must be GRANTED.

(9)     Safety-Kleen's request to exclude any reference to California's Proposition 65 is predicated on the same grounds as Docket No. 150, namely, that plaintiffs cannot rely on this warning to provide evidence of causation.  But the court previously held that plaintiffs could rely on California's Proposition 65 in support of their failure to warn claims (Docket No. 171).  To that

end, the court held that Proposition 65 had probative value that would not seem to be substantially outweighed by any of the elements to which Fed.R.Civ.P. 403 refers to.  Id.  As such, and because plaintiffs do not seek to rely on this warning to prove causation, Safety-Kleen's request must be DENIED.

(10)   Safety-Kleen moves to exclude any case report and irrelevant studies.  Plaintiffs assert they do not intend to rely on any case report, and as such, Safety-Kleen's request must be GRANTED.   Plaintiffs, however, object to Safety-Kleen's request to the extent it refers to irrelevant studies.  The court notes that the reasons on which Safety-Kleen grounds its request was already addressed by the court in its previous Memorandum and Order (Docket No. 171 at p. 6). Therein, the court denied Safety-Kleen's request to exclude Goldsmith's opinion and ruled that any gaps or flaws in his opinion may be elicited during direct and cross-examination.  It need not reach a different result at this time.  Thus, Safety-Kleen's request to exclude irrelevant studies must be DENIED.

(11)   Safety-Kleen requests that plaintiffs be precluded from presenting evidence and making arguments that benzene or mineral spirits causes CML based on an alleged association between benzene and other blood diseases.  It claims that if plaintiffs were so allowed, it would be entitled to present expert testimony distinguishing each of those diseases and their causation from CML.  Plaintiffs state this challenge should go to the weight as opposed to the admissibility of the evidence.   Having evaluated the parties' respective positions, Safety-Kleen's request must be GRANTED on relevance grounds.  See, Fed.R.Evid. 401.[5]  Here, plaintiffs' claims are grounded on Campos' alleged exposure to SK 105 and how it supposedly led him to develop CML.  Being

_____

[5] Even if relevant, such evidence would be excluded for being outweighed by some of the elements to which Fed.R.Evid. 403 refers, namely, unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.

<u>Gerardo Campos, <i>et al.</i></u> v. <u>Safety Kleen Systems, Inc., <i>et al.</i></u>
Civil No. 12-1529 (PAD)
Omnibus Memorandum and Order
Page 14

it so, plaintiffs may not rely on the alleged link between benzene and other diseases not applicable to the instant case.

(12)    Safety-Kleen seeks to exclude evidence pertaining to Safety-Kleen parts washer machines, warnings, labels and safe use instructions for parts washer machines not alleged to have been used by Campos or covering time periods not at issue in this case.  Plaintiffs do not seem to oppose this request, and as such, it will be GRANTED.

(13)    Safety-Kleen moves to enjoin plaintiffs from making reference to other lawsuits, prior or pending claims, and settlement and judgments involving Safety-Kleen.  Plaintiffs inform they do not intend to introduce evidence so referencing, but may nevertheless use prior deposition testimony of expert for impeachment purposes.  In consequence, Safety-Kleen's request will be GRANTED.

(14)    Safety-Kleen moves to exclude any evidence pertaining to irrelevant corporate conduct.  Plaintiffs do not seem to oppose, and thus, the request will be GRANTED.

(15)    Safety-Kleen moves to exclude any reference in connection with plaintiffs' unpled and/or dismissed causes of action, to which the latter does not oppose.  For that reason, the request will be GRANTED.

(16)    Safety-Kleen requests the court preclude plaintiffs from presenting evidence on any previously undisclosed expert opinion.  Plaintiffs object.  An expert's report "must contain ... a complete statement of all opinions the witness will express and the basis and reasons for them." Fed.R.Civ.P. 26(a)(2)(B)(i).   Ordinarily, if "a party fails to provide information ... as required by Rule 26(a)," that party may not "use that information or witness to supply evidence ... at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1).  Safety-Kleen fails to inform which alleged undisclosed expert report it seeks to exclude.  Plaintiffs, on the other

hand, do not elaborate on whether the alleged failure to so disclose was substantially justified or is harmless. As a result, the court will refrain from ruling on the objection. Safety-Kleen's request will be DENIED WITHOUT PREJUDICE of being reiterated at trial.

(17)   Safety-Kleen argues that plaintiffs should be prohibited from presenting the deposition testimony of Safety-Kleen's employees and former employees given in other cases. The request is grounded on Fed.R.Civ.P. 32(a)(8) and Fed.R.Evid. 804(b)(1). Plaintiffs counter that such testimonies amount to "admissions by a party under Fed.R.Evid. 32," and that counsel for Safety-Kleen was present during the time in which such testimony was given.[6] After evaluating the parties' arguments, the court understands more context is needed and will refrain from making a ruling at this juncture. That said, the court is disinclined to admit testimony not dealing with the solvent and disease at issue here (virgin SK 105 and CML).

(18)   Safety-Kleen's request that plaintiffs be precluded from relying on Shields' testimony in Batton v. CSX must be DENIED. This issue was already considered by the court in its previous Memorandum and Order, wherein Safety-Kleen requested that any reference to Dr. Shields' prior testimony be excluded under Fed.R.Evid. 401, 402, 403, as it was given in a non-related case.[7] The court ultimately ruled that there "is no sufficient reason why this information cannot be evaluated by the jury along with any other evidence pertaining to the credibility of the witness. Thus, the content of the testimony may be tested during direct and cross examination" (Docket No. 171 at p. 14). To persuasive grounds have been proffered to deviate from that ruling here.

---

[6] (Docket No. 225 at p. 19). But there is no Fed.R.Evid. 32.

[7] Shields previously testified – as part of a deposition in another case – that benzene exposure causes CML whereas here, Dr. Shields will testify that benzene does not cause CML.

Gerardo Campos, *et al.* v. Safety Kleen Systems, Inc., *et al.*
Civil No. 12-1529 (PAD)
Omnibus Memorandum and Order
Page 16

(19)    To the extent plaintiffs agreed not to introduce evidence in connection with Safety-Kleen's wealth, size, profits, or monies spent defending itself from lawsuits, Safety-Kleen's request will be GRANTED.  Plaintiffs may nevertheless introduce general information pertaining to the company, including its location.

(20)(21)(22) Plaintiffs have agreed not to introduce evidence related to (a) insurance coverage, (b) settlement discussions, and (c) the relief sought throughout the case.  That is why Safety-Kleen's remaining requests will be GRANTED.

## F.   Plaintiffs' Opposition to Safety-Kleen's Deposition Designations for María García Pallas at Docket No. 244

Plaintiffs request that Safety-Kleen be precluded from reading excerpts from Dr. María García's deposition to the jury.  They claim that Dr. García is not a party, agent, or designee of plaintiffs, nor is she unavailable to testify in trial.  In fact, she was listed as a witness in this case.  Also, that her testimony would be cumulative, and they reiterate the same grounds as in Docket No. 212.  In addition, plaintiffs submit a list of counter designations.

Fed.R.Civ.P. 32 governs the use of depositions in court proceedings.  None of the reasons for allowing Safety-Kleen to use portions of Dr. García's deposition as evidence under Rule 32 appear to be present.  Also lacking are the conditions contemplated in Fed.R.Evid. 804 for admitting that type of testimony.  Accordingly, plaintiffs' request must be GRANTED.

## G.   Plaintiffs' Response to Defendant's Deposition Designations of Dr. Tsai and Motion to Exclude Same at Docket No. 245

Plaintiffs ask the court to exclude Safety-Kleen's deposition designations for Dr. Tsai. Plaintiffs originally disclosed Dr. Tsai as an expert.  Safety-Kleen sought to exclude her testimony via a Daubert challenge (Docket No. 94).  And plaintiffs subsequently withdrew Dr. Tsai from

their experts' list (Docket No. 116).  Now Safety-Kleen intends to have some portions of her testimony admitted as evidence at trial.  Yet it does not articulate why Dr. Tsai should be considered an unavailable witness within the purview of Fed.R.Evid. 804, or how her deposition should be otherwise admitted under Fed.R.Civ.P. 32.  In fact, Safety-Kleen does not even allege that Dr. Tsai is unavailable.  So plaintiffs request must be GRANTED.

### H. Safety-Kleen's Objections and Counter-Designations to Plaintiffs' Deposition Designations for Use at Trial at Docket No. 248

Safety-Kleen filed a ninety-two (92) page document seeking to enjoin plaintiffs from introducing into evidence excerpts of deposition testimony from eighteen (18) prior Safety-Kleen employees and expert witnesses.  These requests are predicated on Fed.R.Civ.P. 32 and Fed.R.Evid. 401-403, 802 and 804.  After evaluating plaintiffs' deposition designations as well as Safety-Kleen's objections thereto, the court will exclude the deposition testimony of (1) Dennis Brinkman, (2) Clark Rose, (3) Elizabeth Eich, (4) Hyman Bielsky, (5) Paul Dittmar, (6) James Isanhart, (7) John Dingess; (8) John Schmitz; (9) John Kusz; (10) Johnathan Steele; (11) Larry Dean Hufsey; (12-14) James Breece; (15) Scott Fore; (16) Steve Vlk; and (17) Richard Donley.

Foremost, plaintiffs failed to address how these witnesses would be unavailable to testify or how their deposition transcripts would otherwise be admissible at trial so as to allow their deposition transcripts as evidence.  See, Fed.R.Evid. 804; Fed.R.Civ.P. 32.  What is more, all of these purported witnesses gave their testimony in the context of different cases none of which dealt with CML or the virgin form of SK 105.[8]  In the end, plaintiffs' claims are predicated on Campos'

---

[8] For example, Brinkman, Rose, Eich, Bielsky, Dittmar, Isanhart, Dingess, Schmitz, Kusz, Steele, Hufsey, Fore, Vlk, and Donley, gave their corresponding testimony in the case of Jorge Talley v. Safety-Kleen Corp. et al., Case No. 784605 in the Superior Court of California, Orange County Part (1998).  Therein, the plaintiff suffered from other illnesses – namely, Non-Hodgkin's Lymphoma, and Acute Myeloid Leukemia – and was exposed to a solvent different from the one in the case at hand – recycled as opposed to virgin SK 105.  But Campos was never exposed to the

alleged exposure to virgin SK 105 solution and how it led him to develop CML. Given these circumstances, their deposition testimony will be excluded.[9] Since (12-14) James Breece will testify at trial, however, plaintiffs may use prior depositions for impeachment purposes. See, Fed.R.Civ.P. 32(a)(2); and Fed.R.Evid. 607.

Plaintiffs also designated the entire deposition transcript of (18) Randy Caillier, a Makita U.S.A., whose deposition was taken in connection with this case. Again, plaintiffs fail to establish why this witness is unavailable to testify at trial so as to allow the deposition transcript to be admitted as evidence. As such, his testimony will also be excluded.

## II.   CONCLUSION

In sum, the present rulings produce the following landscape.

PLAINFIFFS

- Plaintiffs may rely on (1) Dr. García's testimony in support of their claims of future medical expenses and alleged benzene-CMLA causation;[10] (2) Campos' testimony for loss of earnings; (3) California's Proposition 65; (4) relevant studies as relied on to by Dr. Goldsmith; (5) Dr. Shields' testimony in Batton v. CSX; and (6) general information pertaining to Safety-Kleen, including its location.

---

[9] recycled form SK 105. In fact, no such product was purchased by the company where he worked during the time he was exposed allegedly to SK 105. Furthermore, Campos is not alleged to suffer from Non-Hodgkin's Lymphoma or Acute Myeloid Leukemia.

[9] Such testimony is irrelevant. See, Fed.R.Evid. 401. And even if somehow relevant, its potential probative value is substantially outweighed by all of the elements to which Fed.R.Evid. 403 refers. Also weighing in favor of exclusion is Fed.R.Civ.P. 32(a)(8), which provides, in relevant part, that "[a] deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action." No such circumstance is present here.

[10] To the extent Dr. García testifies affirmatively as to causation as part of plaintiffs' case-in-chief, Safety-Kleen may cross-examine her as to the basis for her testimony on that subject.

- Plaintiffs may not present testimony of any witness not previously identified.[11]  Nor may they introduce as evidence deposition testimony of any of the eighteen (18) witnesses referred to at Docket No. 248.

- Finally, plaintiffs may not make any reference to (1) constituents of SK 105 not alleged to have caused Campos' CML; (2) recycled SK 105 and the recycling process; (3) the fact that recycled SK 105 is banned from the United States; (4) Campos' dermal exposure in support of their claims; (5) safer alternative designs; (6) other standards in support of their claim for duty to warn, except the ones included herein; (7) case reports; (8) the alleged relationship between benzene and other diseases apart from CML; (9) Safety-Kleen parts washer machines, warnings, labels and safe use instructions for parts washer machines not alleged to have been used by Campos, or covering time periods not at issue in this case; (10) other lawsuits, prior pending claims, and settlement and judgments involving Safety-Kleen; (11) irrelevant corporate conduct; (12) any unpled and/or dismissed cause of action; (13) Safety-Kleen's wealth, size, profits, or monies spent defending itself from lawsuits; (14) insurance coverage; (15) settlement discussions; and (16) the relief sought throughout the case.

SAFETY-KLEEN

- Safety-Kleen may present documentary evidence pertaining to (1) collateral sources for purposes other than reducing the amount of recovery; (2) smoking; (3) service records from Makita and National Tools; (4) video of Fedoruk Study; (5) IARC; and (6) EPA's and

---

[11]  They may only call two (2) to three (3) family members/friends/work supervisors.

Safety-Kleen's 9211 methods.  It may not, however, rely on (1) expert reports and/or *curriculum vitae*; and (2) scientific articles and studies.

- Safety-Kleen may reiterate its objections to plaintiffs' exhibit list during trial.  The court, is inclined to exclude – on relevance grounds – testimony, documentary and/or any other evidence not involving the solvent and disease at issue in this case.[12]

- Safety-Kleen may not submit as evidence portion(s) of Dr. García's deposition.

- Safety-Kleen may not submit as evidence portion(s) of Dr. Tsai's deposition.

In view of the foregoing:

- "Plaintiffs' Motion in Limine as to Fact Witness Dr. María García, Plaintiff's Treating Physician" (Docket No. 212) is DENIED.

-  "Motion in Limine and Plaintiff's Objections as to Defendant's Exhibits" (Docket No. 213) is GRANTED IN PART AND DENIED IN PART.

- "Defendant Safety-Kleen Systems, Inc.'s Objections to Plaintiffs' Witness List" (Docket No. 215) is MOOT IN PART AND DENIED WITHOUT PREJUDICE IN PART.

- "Defendant Safety-Kleen Systems, Inc.'s Objections to Plaintiffs' Exhibit List" (Docket No. 222) is DENIED WITHOUT PREJUDICE.

- "Defendant Safety-Kleen Systems, Inc.'s Motion in Limine" (Docket No. 223) is GRANTED IN PART AND DENIED IN PART.

- "Plaintiffs' Motion to Exclude the Deposition of Dr. María García Pallas, and Objections and Counter Designations to Defendant's Deposition Designations of María García Pallas" (Docket No. 244) is GRANTED.

---

[12] Namely, any and all evidence not dealing with virgin SK 105 and CML.

<u>Gerardo Campos, *et al.*</u> v. <u>Safety Kleen Systems, Inc., *et al.*</u>
Civil No. 12-1529 (PAD)
Omnibus Memorandum and Order
Page 21

- "Plaintiffs' Response to Defendant's Deposition Designations of Dr. Tsai and Motion to Exclude Same" (Docket No. 245) is GRANTED.

- "Defendant Safety-Kleen Systems, Inc.'s Objections and Counter-Designations to Plaintiffs' Deposition Designations for Use at Trial" (Docket No. 248) is GRANTED.

**SO ORDERED.**

In San Juan, Puerto Rico, this 8th day of January, 2016.

<u>S/Pedro A. Delgado-Hernández</u>
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge